IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2018

**STATE OF TENNESSEE v. JOSEPH PROFFITT**

**Appeal from the Criminal Court for Shelby County**
**No. 14-03792          Glenn Ivy Wright, Judge**

_____

**No. W2017-01958-CCA-R3-CD**

_____

The Defendant, Joseph Proffitt, was convicted of two counts of attempted second degree murder, three counts of aggravated assault, and two counts of employing a firearm during the attempted murders. He received an effective sentence of fourteen years. On appeal, the Defendant challenges only his convictions for attempted second degree murder, arguing that the evidence is insufficient to support the verdicts. Upon reviewing the record and applicable law, we affirm the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Patrick Stegall (on appeal) and Mark McDaniel (at trial), Memphis, Tennessee, for the appellant, Joseph Proffitt.

Herbert H. Slatery III, Attorney General and Reporter; Johnathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 3, 2012, the Defendant and his brother, Mr. David Proffitt,[1] were visiting friends at an apartment complex in Memphis, Tennessee, when they were alerted

---

[1] For clarity, throughout this opinion we will refer to Mr. Joseph Proffitt as "the Defendant" and to Mr. David Proffitt, the Defendant's brother, as "Mr. Proffitt."

to the fact that Mr. Proffitt's Ford F150 truck was being towed. In the dispute that followed, the Defendant ultimately fired multiple shots at two of the men towing the vehicles, permanently paralyzing one of them. At trial, the defense attempted to establish that the Defendant fired in self-defense after the driver of the tow truck attempted to assault him with the vehicle.

Mr. Scott Arnold, Mr. Jonathan Cook, and Mr. David Yates were employees of 901 Tow, a tow truck company that had a contract with the apartment complex to tow any vehicles that did not have a permit to park there. The tow truck workers arrived at the apartment complex around 8:00 pm. Mr. Arnold and Mr. Cook were in one tow truck, and Mr. Yates was in another. Mr. Yates was the first one to find a vehicle that was parked illegally, a Ford F150 truck. Initially, Mr. Yates started to load the Ford truck onto his tow truck. However, while in the process of loading the Ford onto his truck, a part on his tow truck had stopped working. Mr. Yates informed Mr. Arnold and Mr. Cook that he needed assistance, and they met him on the road outside of the apartment complex.

Mr. Yates transferred the Ford truck from his tow truck to the tow truck driven by Mr. Arnold. While Mr. Yates was in the process of transferring the truck, a silver Cadillac Deville, driven by the Defendant, pulled up beside Mr. Arnold's tow truck.

Mr. Arnold identified the Defendant as the driver of the Cadillac. He recalled that the Defendant and another man exited the Defendant's car. The Defendant walked to the front of the tow truck and looked inside. The Defendant then walked to the passenger side of the tow truck and tried to open the door. Mr. Arnold said he and Mr. Cook never spoke with the Defendant. When Mr. Cook refused to open the door, the Defendant angrily started beating on the passenger side window with the butt of a gun. Mr. Arnold testified that Mr. Cook shouted that he saw a gun and told Mr. Arnold to drive away. When Mr. Arnold started to pull away, he could hear shots being fired. Mr. Arnold testified that the Defendant was facing the passenger side door and shooting toward the passenger side of the tow truck. As he was pulling away, Mr. Arnold could see that Mr. Yates was still standing beside the other tow truck.

While Mr. Arnold was driving away from the Defendant, his body went numb. He testified that he turned to Mr. Cook and told him, "I've been hit, Man. I can't feel my legs. Stop the truck." He experienced a lapse in memory but remembered talking to the police when they arrived on the scene. The bullet that hit Mr. Arnold caused him to be permanently paralyzed from the armpits down. The bullet passed through the right side of his back and permanently lodged on the left side of his spine behind his heart.

Mr. Cook, who was in the tow truck with Mr. Arnold, testified that when the Defendant first drove to where the tow trucks were parked, he parked at an angle in front of Mr. Arnold's truck, blocking the tow truck from leaving. Mr. Cook testified that while the Defendant was standing in front of Mr. Arnold's tow truck, the Defendant started yelling. Mr. Cook also remembered the Defendant banging on the passenger side window with the butt of his gun. Mr. Cook heard shots being fired as Mr. Arnold started to accelerate. Mr. Cook recalled that the Defendant was standing on the passenger side of Mr. Arnold's tow truck when he began firing his weapon. While the Defendant was shooting in the direction of the tow truck, Mr. Cook hid on the passenger-side floorboard to avoid getting shot. He realized that Mr. Arnold had been shot when the tow truck veered off the road. Mr. Cook grabbed the steering wheel and put his foot on the brake so that he could stop the tow truck. He was able to stop the tow truck in the center lane of Shelby Drive.

Mr. Cook then called 911. While he was on hold for 911, the Cadillac, driven by the Defendant, stopped beside the tow truck. Mr. Cook testified that he believed the Defendant had followed them so that "they could shoot at us again." At that point, Mr. Yates pulled his tow truck up behind the Defendant's car. The Defendant sped off, and Mr. Yates followed him.

Mr. Yates testified that there was another individual with the Defendant and Mr. Proffitt that night. Mr. Yates also testified that the Defendant approached the driver's side window instead of the passenger side window of Mr. Arnold's tow truck. He recalled that the driver's side window was down and that once Mr. Arnold rolled the window up, the Defendant began banging on the window. The Defendant fired the shots when the tow truck started to move. Mr. Yates was standing behind Mr. Arnold's tow truck on the passenger side of his own tow truck when the shooting happened. Mr. Yates saw the Defendant shoot his gun while Mr. Yates was speaking with Mr. Proffitt about towing the Ford truck.

After the Defendant fired the shots, Mr. Yates saw the three men return to the Cadillac. Mr. Yates followed the Defendant's car in his tow truck. When he drove onto Shelby Drive, he noticed that the Cadillac had stopped beside Mr. Arnold's tow truck. When the Defendant saw Mr. Yates, he sped away from Mr. Arnold's tow truck. Mr. Yates stopped beside Mr. Arnold's tow truck, and Mr. Arnold said that he had been hit and that he could not feel his legs. Mr. Yates followed the Cadillac driven by the Defendant through a neighborhood and hit the Defendant's car at numerous points while chasing him. The Cadillac pulled back onto Shelby Drive where it parked in front of Mr. Arnold's tow truck. Mr. Yates again hit the Cadillac with his tow truck. He then got out of his truck and ran to the Cadillac where he sprayed the Defendant, Mr. Proffitt, and an unknown third male with mace.

After Mr. Yates sprayed mace on the men in the car, Mr. Proffitt and the other male took off on foot in one direction and the Defendant in the other. Mr. Yates chased the Defendant on foot spraying him with mace multiple times. Mr. Yates testified that he used an entire can of mace during the encounter. Eventually, they came to a church parking lot where Mr. Yates sprayed the Defendant with mace again and detained him until the police arrived.

Mr. Proffitt, the Defendant's brother, owned the truck that was the subject of the dispute. Neither Mr. Proffitt nor the Defendant lived at the apartment complex. Mr. Proffitt testified on behalf of the State that he heard the car alarm on the Defendant's Cadillac going off. At that point, Mr. Proffitt and the Defendant went outside to the parking lot. Mr. Proffitt saw Mr. Arnold and Mr. Yates transferring his Ford truck from one tow truck to the other on the road outside of the apartment complex. Mr. Proffitt stated that he ran outside the apartment complex where the tow trucks were located and questioned Mr. Yates about whether Mr. Proffitt could pay him to have his truck back. While Mr. Proffitt and Mr. Yates were talking, Mr. Proffitt heard the gun shots. He testified did not see the shooting because his back was turned. He had previously given the police a statement that the Defendant shot the gun, but at trial he insisted that he did not actually see the Defendant fire his weapon because his back was turned.

After Mr. Proffitt heard the shots, he ran toward the Defendant. He got into the Defendant's car, and the Defendant drove onto Shelby Drive where he pulled up next to Mr. Arnold's tow truck. Mr. Proffitt testified that Mr. Yates pulled behind the Defendant's car and started to ram the car with his tow truck. Mr. Proffitt said that Mr. Yates rammed the Defendant's car through a neighborhood and eventually they were back on Shelby Drive in between Mr. Arnold's and Mr. Yates's tow trucks. At that point, Mr. Proffitt climbed out of the window of the Defendant's car because the car door was jammed. Mr. Proffitt testified that Mr. Yates came up to the car and identified himself as a police officer. The Defendant put his gun on the ground, and Mr. Yates sprayed both the Defendant and Mr. Proffitt with mace.

Mr. Proffitt stated that Mr. Yates told him, "You can leave the scene … you have nothing to do with this." Mr. Proffitt testified that he remained on Shelby Drive until the police arrived. He said that when the police arrived on the scene they told him he could leave, but a few minutes later, officers stopped him as he was walking down the street and asked him to give a statement. The officers removed a gun that Mr. Proffitt was carrying, and they drove him to Shelby Drive where they asked Mr. Yates if Mr. Proffitt was present at the time of the shooting.

Memphis Police Officer Adam Pickering processed Mr. Arnold's tow truck. Officer Pickering testified that the back window of the tow truck was broken. Officer

- 4 -

Pickering believed one bullet entered the truck from behind, passed through the cab of the truck, passed through the rearview mirror, and exited through the front windshield. He also stated that another bullet passed through the rear window and through the driver's side headrest.

In Officer Pickering's opinion, the Defendant was standing behind the truck on the passenger side when he was shooting. He believed that the shots could not have been fired from in front of the truck, but on cross examination, he testified, "I cannot state that [with] one hundred percent certainty." The only damage to the front of Mr. Arnold's tow truck was the hole in the front windshield.

Sergeant Demar Wells, a crime scene investigator, found five .40 caliber spent casings and one bullet fragment at the scene. Four of the casings were "R.P. S&W" and one of the casings was a "Winchester S&W" casing. Sergeant Wells explained that the only difference in the casings was that they were two different brand names. Sergeant Wells testified that there were at least seven shots fired.

Mr. Spencer Hampton testified at trial on behalf of the Defendant. He was a guest at the apartment that the Defendant and Mr. Proffitt were visiting that night. He was in the apartment when four women knocked on the door and told Mr. Proffitt that his car was being towed. Mr. Hampton testified that the Defendant's car was also being towed. He stated that Mr. Proffitt ran toward the tow trucks and tried to convince Mr. Yates to return his truck. The Defendant pulled up to the left side of the tow truck in his Cadillac. Mr. Hampton testified that while Mr. Proffitt was talking to Mr. Yates, the Defendant was standing in front of Mr. Arnold's tow truck "holding his hand up asking him where he was going with his brother's truck."

According to Mr. Hampton, Mr. Arnold responded by saying, "F*** you, n****r. I'm taking your truck to the yard." Mr. Hampton testified that Mr. Arnold was revving the tow truck and that "[y]ou could hear him smashing on the gas." Mr. Hampton said that the Defendant was directly in front of the truck when the tow truck started to move forward. Mr. Hampton testified that "it happened so fast like that. When it moved you heard shots immediately." Mr. Hampton returned to his house that night and did not speak with the police.

The Defendant testified that when he saw his brother's truck being towed, he got into his car and pulled up beside Mr. Arnold's tow truck. He stood in front of the truck and put his hands up. He stated that he asked Mr. Arnold, "Where are you taking my brother's truck?" and that Mr. Arnold replied, "F*** you n*****r." Mr. Arnold then told the Defendant that he would have to go to the impound lot to retrieve the truck. The Defendant said Mr. Arnold began revving the truck while the Defendant was still

standing in front of the truck. The Defendant testified that he "jumped out of the way. I reached for my weapon and I fired for the safety of my own life." He said he fired four rounds from his Smith and Wesson .40 caliber hand pistol.

The Defendant testified that after the shooting, he got into his car and followed Mr. Arnold's tow truck because he was going to call an ambulance for him. He testified that in obtaining his concealed carry permit, he was trained to call 911 in the event that he shot someone. When he stopped beside Mr. Arnold's tow truck, Mr. Yates started ramming him from behind. The Defendant testified that he did not try to speed away from Mr. Yates but that he was trying to regain control of his car after Mr. Yates "rammed" his car repeatedly. The Defendant asserted that Mr. Yates's tow truck forced him through the neighborhood and back onto Shelby Drive.

Once back on Shelby Drive, the Defendant got out of his car. He testified that Mr. Yates identified himself as a police officer by presenting a badge and that he instructed the Defendant to lay down his weapon. The Defendant put his weapon on the ground, and Mr. Yates sprayed him with mace. The Defendant denied ever running away or that Mr. Yates sprayed him with mace multiple times.

The jury convicted the Defendant of two counts of attempted second degree murder, three counts of aggravated assault, and two counts of employing a firearm during the attempted murder. The trial court merged the two convictions for the aggravated assault of Mr. Arnold. The trial court later sentenced the Defendant to a fourteen-year effective sentence. The Defendant filed a motion for new trial, which the trial court denied. This appeal follows.

**ANALYSIS**

The Defendant argues that the evidence was insufficient to support his convictions for attempted second degree murder and that the proof more accurately supports a conviction for the lesser charge of attempted voluntary manslaughter. The standard for appellate review in determining the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have the essential elements of the crime beyond a reasonable doubt.'" *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A defendant "must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt" in order to obtain relief on a claim for insufficient evidence. *State v. Perrier*, 536 S.W.3d 388, 408 (Tenn. 2017). Further, because a jury conviction removes a defendant's presumption of innocence and "replaces it with one of guilt at the appellate level, the burden of proof

shifts from the State to the convicted defendant," who must demonstrate that the evidence is insufficient support the jury's verdict. *Id.*

Appellate courts "will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we reweigh or re-evaluate the evidence." *Id.* (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). The determination of "'[t]he credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)).

Second degree murder is the "knowing killing of another." T.C.A. § 39-13-210(a)(1). A person acts knowingly "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-106(a)(20); *see also* T.C.A. § 39-11-302. Second degree murder is a result of the conduct offense. *State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000). The Tennessee Supreme Court has determined that the "statute focuses purely on the result and punishes an actor who knowingly causes another's death. The intent to engage in conduct is not an explicit element of the state's case in second degree murder." *Id.* This court has previously stated that an attempted second degree murder occurs when one "'[a]cts with intent to cause' the knowing killing of another and 'believes the conduct will cause' the killing of another 'without further conduct on the person's part.'" *State v. Bonds*, 502 S.W.3d 118, 145 (Tenn. Crim. App. 2016) (quoting T.C.A. § 39-12-101(a)(2)). The trial court instructed the jury that to find that the Defendant committed attempted second degree murder the State must prove beyond a reasonable doubt the following elements: "(1) that the defendant intended to commit the specific offense of Second Degree Murder; and (2) that the defendant did some act intending to cause an essential element of Second Degree Murder to occur, and at the time believed would cause the element to occur without further action on the defendant's part."

The Defendant claims that watching his brother's Ford truck being towed put him "in such a state of passion as to cause him to act in irrational manner" such that he was not guilty of attempted second degree murder, but that he should have instead been convicted of attempted voluntary manslaughter. Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211. Specifically, the Defendant asserts that the jury "did not give sufficient weight to just how agitated he had become." The State responds by arguing that it is a question for the jury to determine whether there was adequate provocation. *See State v. Williams*, 38 S.W.3d 532, 539 (Tenn. 2001). At trial, the Defendant claimed self-defense and also argued that the victims' actions constituted adequate provocation such that he

should be convicted of attempted voluntary manslaughter. However, "[b]y its verdict the jury obviously rejected both arguments." *Id.*

Viewing the evidence in the light most favorable to the State, we conclude that the evidence presented at trial was sufficient to support the jury's conviction of two counts of attempted second degree murder. It is undisputed that the Defendant knowingly fired at least four rounds into the tow truck containing the two victims. The evidence presented at trial established that the Defendant was not standing in front of the tow truck when he fired his weapon. The jury rightfully rejected the Defendant's argument that his actions were justified because he was in state of passion caused by the towing of his brother's truck. It is apparent from the record that the jury heard and rejected the Defendant's self-defense argument at trial, and this court will not "reweigh or reevaluate the evidence." *Henley v. State*, 960 S.W.2d, 572, 578-79 (Tenn. 1997). Accordingly, the evidence presented at trial is sufficient to support the Defendant's convictions.

## CONCLUSION

Based on the foregoing, we affirm the Defendant's convictions of attempted second degree murder.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE